**ASPHALT INDUSTRIES, INC.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 16265.**

United States Court of Appeals
Third Circuit.

Argued April 18, 1967.

Decided Aug. 23, 1967.

Rehearing Denied Sept. 26, 1967.

Daniel Mungall, Jr., Stradley, Ronon,
Stevens & Young, Philadelphia, Pa.
(Robert M. Taylor, Philadelphia, Pa.,
on the brief), for petitioner.

Loring W. Post, Department of Justice,
Tax Division, Washington, D. C. (Mitch-
ell Rogovin, Asst. Atty. Gen., Lee A.
Jackson, Meyer, Rothwacks, Attys., De-
partment of Justice, Washington, D. C.,
on the brief), for respondent.

Samuel Taylor, Bernard J. Schoenberg, Taylor & Winokur, San Francisco, Cal., amici curiae on the brief.

Before SMITH and FREEDMAN, Circuit Judges, and WORTENDYKE, District Judge.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Petitioner attacks a decision of the Tax Court upholding income tax deficiencies totalling $96,172.84 and fraud penalties totalling $52,674.18 for the years 1955 to 1960. 46 T.C. 622 (1966).

Petitioner is a Pennsylvania corporation and during the tax years involved its stock was owned one-half by Conrad V. Anderson, Jr., and the other half by Richard Schwoebel. Anderson was the president of the corporation and devoted his full time to its business which was the sale and application of road surfacing materials. Schwoebel was the secretary and treasurer of the corporation; he devoted most of his time to another business of his own, but he was able to send substantial amounts of business to the corporation and occasionally supervised specific jobs for it. This took about ten percent of his time. The Board of Directors was composed of the two owners and Arthur Sanford, an employee of the corporation who also served as vice president and assistant secretary. Anderson, with Sanford, supervised the office and the day to day operations. Anderson consulted Schwoebel on all important corporate decisions. Anderson and Schwoebel were paid salaries by the corporation; Anderson's salary ranged from four to six times that of Schwoebel. During the years involved the corporation paid one cash and stock dividend in 1956, which was distributed equally to Anderson and Schwoebel, the two stockholders.

Each year an independent auditing firm, after auditing the corporation's books, made a report of its examination to the two stockholders and prepared the corporation's income tax returns, which were signed by Anderson as president.[1]

Anderson died unexpectedly in 1960. Under their stockholders' agreement Schwoebel will become the owner of Anderson's stock and thus the sole stockholder.[2] Because of Anderson's death, Schwoebel was forced to give more time to the corporation's affairs. As a result he discovered that Anderson had from 1955 until his death in 1960 diverted substantial amounts of corporate funds to his own use. The plan by which he did this was to keep individual sales from being recorded on the corporation's books and then endorsing and cashing for his own use the checks sent in payment. The checks, which were made payable to the corporation, were cashed at its bank on the authority of a letter which Anderson and Sanford wrote to the bank stating falsely that the corporation authorized Anderson to do so. These sales by the corporation and the payments for them, which came into Anderson's personal possession, therefore were not reflected on its books, and were unknown to the corporation's auditors. Sanford, who was little more than a paid office clerk, helped to cover up Anderson's defalcations but apparently received no benefit from them. Schwoebel, relying completely on the auditor's reports which in turn were based on the records supplied by Anderson and Sanford, had no knowledge of the defalcations. The corporate income tax returns, of course, were prepared by the auditors on the basis of the corporation's records, and did not reflect the receipts embezzled by Anderson.

Promptly on discovering the defalcations Schwoebel consulted his counsel, on whose advice he reported them to the Internal Revenue Service. The Service then made the present tax fraud assessments against the corporation. The corporation then brought suit against Anderson's estate for the corporate in-

---

1. The corporation's 1960 tax return was signed by Sanford after it was prepared by the auditors.

2. Anderson's stock is being held by his estate pending the conclusion of litigation between the estate and the corporation.

come which he had embezzled, and that action is still pending.

## I.

Petitioner conceded in the Tax Court that the funds embezzled by Anderson constituted income to the corporation and does not raise this issue here. The amicus curiae's brief, however, urges that the corporation never received these funds as taxable income because it derived no economic benefit from them as a result of Anderson's misappropriation.

■ We might readily dismiss this contention on the ground, as urged by the Commissioner, that it is not properly before us. It is, however, totally lacking in merit. It is axiomatic that a corporation can act only through its officers and other agents. Anderson received the payments as agent for the corporation exactly as he did with payments which were properly credited to the corporation's account. The corporation was on an accrual basis as a taxpayer, and when it made sales to its customers their liability for payment arose and thereby created an account receivable in favor of the corporation. Corporate income accrued at that time. That the funds in payment of the corporation's accounts receivable were diverted and never actually passed into the corporation's treasury is without significance for tax purposes. Union Stock Farms v. Commissioner of Internal Revenue, 265 F.2d 712, 721 (9 Cir. 1959). The fact that Anderson, the corporation's duly authorized representative who exercised dominion over the payments, was able subsequently to misappropriate the funds because he had such dominion does not alter their character as corporate income.

The amicus curiae relies principally on Alsop v. Commissioner of Internal Revenue, 290 F.2d 726 (2 Cir. 1961), but that case did not deal with the taxability of the embezzled income. It involved the right of an author, a cash basis taxpayer, who had obtained a judgment against her literary agent, to deduct it as a loss in the year she obtained it, although she had not returned the embezzled funds as

income, and also whether she was taxable with the amount of the recovery on another judgment in the year of recovery when she had not reported the embezzlement itself as income. In the present case the sales were made by the corporation and the funds in payment for them were sent to the corporation's office in discharge of the customers' liability to the corporation. Moreover, we are not considering at this point the right to a deduction, but whether the accounts receivable were income to the accrual basis taxpayer or are to be deemed obliterated because the funds in payment for them were embezzled by the officer whose customary duty it was to take charge of their receipt.

Other cases relied on by the amicus, such as Harry Sherin, 13 T.C. 221 (1949), and All Americas Trading Corp., 29 T.C. 908 (1958), are not in point. In *Sherin,* the president of the corporation received from its sales agent a large share of illegal payments above O.P.A. ceilings on sales of goods. The corporation was paid the O.P.A. price and the president received the additional payments in cash from the sales agent. The other half-owner of the corporation was unaware of the president's conduct. The customers, of course, well knew that they were bribing the president to prefer them in the sale of goods which were in short supply. The Tax Court held that the president was not acting for the other stockholder or the corporation when he received his share of the illegal above-ceiling payments. In *All Americas,* the payments involved were received by an officer, but they were paid by the customers out of their own funds after the corporation had paid them for the goods which they had supplied to the corporation. The Tax Court found that the officer was not acting for the corporation in receiving the payments. These cases involved private transactions between the corporate officer and the outside party which both knew and intended to be outside the range of the corporate transaction, and in both cases the Tax Court held that the corporation had not received

income. Here the transactions consisted of the normal activities of the corporation; what Anderson received was in no way the product of his personal efforts beyond the range of the normal corporate business and the payments made by the corporation's customers were not intended for Anderson but for the corporation. What the corporation received but which Anderson embezzled was corporate income. That the corporation never received the benefit of it was the result of the embezzlement by its president and did not follow from the nature of the fund itself.

## II.

The fundamental issue in the case is whether Anderson's fraudulent intention to evade the tax may be attributed to the corporation. This would break the three year limitation barrier of § 6501 of the Internal Revenue Code of 1954 [3] to the assessment for underpayment,[4] and would also justify the imposition of the 50% penalties authorized by § 6653 (b) for underpayment of tax due to fraud.[5]

We may for present purposes consider that there is no distinction in the meaning of fraud under § 6501(c) (1), which speaks of "a false or fraudu-

lent return with the intent to evade tax" and § 6653(b), which speaks of "any underpayment * * * of tax * * * due to fraud". The burden of proof imposed on the Commissioner by § 7454 (a) [6] which he must meet with clear and convincing evidence [7] requires that in order to remove the bar of the statute of limitations and to impose the 50% fraud penalties he must prove that the corporation was legally chargeable with making a false return with intent to evade the tax.[8]

Petitioner maintains that Anderson's intention was to defraud the corporation and not the Treasury, and that the false tax returns which he had prepared were a subordinate consequence of his primary purpose. Even if it could be said that Anderson intended to defraud the Treasury, petitioner contends that the corporation which he defrauded is not chargeable with his wrong to the Treasury, because it was at the most a part of his fraudulent plan against the corporation. Finally it attacks as inconsistent the attribution to the corporation of Anderson's fraudulent intention in filing its false returns while at the same time denying to it the right to deduct his embezzlements as losses in the year in which they oc-

3. Section 6501 provides:
"(a). Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
　　*　　*　　*　　*　　*
(c) (1). In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

4. The three-year statute of limitations, but for the fraud, would bar all but the assessment for 1960.

5. Section 6653(b) provides:
"(b). If any part of any underpayment * * * of tax required to be

shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *"

6. Section 7454(a) provides:
"In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate."

7. See Valetti v. Commissioner of Internal Revenue, 260 F.2d 185 (3 Cir. 1958); Commissioner of Internal Revenue v. Rubinstein, 264 F.2d 478 (3 Cir. 1959).

8. See Cirillo v. Commissioner of Internal Revenue, 314 F.2d 478, 482 (3 Cir. 1963); Powell v. Granquist, 252 F.2d 56, 61–62 (9 Cir. 1958); Wiseley v. Commissioner of Internal Revenue, 185 F.2d 263, 266 (6 Cir. 1950); Mitchell v. Commissioner of Internal Revenue, 118 F.2d 308, 310 (5 Cir. 1941).

curred, under § 165(e),[9] on the ground that it did not learn of the losses until Schwoebel discovered them in 1961. How, asks petitioner, can Anderson's fraud be attributed to the corporation without also attributing to it his knowledge of the fraud at the time it occurred? If Anderson's knowledge was the knowledge of the corporation, then his thefts were within its knowledge when they occurred and were deductible in the year of the fraud and so cancelled the assessment for underpayments and for the fraud penalties based on the underpayments. Our conclusion makes it unnecessary to decide whether Anderson's embezzlements constituted "thefts" within the meaning of § 165(e). For the same reason we put aside the interesting and important question of the effect of the change made by the 1954 Code, which altered the time for deduction from the year in which the theft occurred to the year of its "discovery". Adopted as it was for the benefit of taxpayers who discovered in a later year the fraud of their officers or employees, is it now to be so rigidly applied that in cases such as this the deduction may not be made in the year of the fraudulent return and so cancel out the unreported income? It is also unnecessary for us to decide the effect on the allowance of the deductions of Schwoebel's pending action against Anderson's estate for recovery for the theft.[10]

The Tax Court found that Anderson dominated the corporation's affairs and that he intended to avoid the payment of the corporate income taxes. We cannot say that either of these findings is clearly erroneous and they must therefore stand. They still leave open for determination, however, the question whether such elements permit the attribution of Anderson's fraudulent intention to the corporation.

In considering whether Anderson's conduct in relation to the Treasury should be attributed to the corporation we must be guided by general principles of corporate responsibility and such exceptions as are requisite in looking beyond form in order not to lose contact with reality. The general principle was stated by Judge Raum for the Tax Court in Botwinik Bros. of Mass., Inc., 39 T.C. 988, 996 (1963): "[t]he fundamental assumption in these cases [which hold that the intentions of the officers of a corporation must be imputed to the corporation] is that the officer or agent was acting *in behalf of, and not against the interests of*, the corporation". It is only realistic to hold within the framework of this principle that the fraud of a sole stockholder may be attributed to the corporation,[11] for otherwise form would be permitted to obscure substance. Similarly, where there are a number of stockholders, but all of them are parties to the fraud, it is realistic to make the corpora-

---

9. Section 165(e) provides:
   "For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss."

10. See Treasury Regulations, §§ 1.165–1 (d) (3), 1.165–8(a) (2), which provide:
   "Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss. * * * However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty

whether or not such reimbursement will be received.
   "A loss arising from theft shall be treated under section 165(a) as sustained during the taxable year in which the taxpayer discovers the loss. See section 165(e). Thus, a theft loss is not deductible under section 165(a) for the taxable year in which the theft actually occurs unless that is also the year in which the taxpayer discovers the loss. However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, see paragraph (d) of § 1.165–1."

11. R. C. Williams & Co., Inc., 22 CCH Tax Ct.Mem. 229 (1963); Auerbach Shoe Co., 21 T.C. 191 (1953), aff'd, 216 F.2d 693 (1 Cir. 1954).

tion bear the consequences.[12] Within the framework of what are essentially sole proprietorships or intimate incorporated partnerships fall those fraud cases where the wrongdoer so dominates the corporation that it is in reality the creature of his will.[13] In such a case, even though there be more than one stockholder, the corporation will be considered to have been a party to the fraud.[14] These exceptional circumstances, however, do not obliterate the usual rules of principal and agent. To permit the officers of a corporation to conduct its affairs is presumably to intend that they shall conduct them honestly and within the limits of their corporate duty. It does not constitute an authorization to embark upon fraud against others, much less against the inactive stockholder himself. It is easy enough to attribute the sole stockholder's fraud to the corporation and to attribute the fraud of one of a number of stockholders to the corporation where there are circumstances present which justify it because of acceptance of benefits received or conduct leading others to rely upon an authority which does not in fact exist.

In the present case Schwoebel was an independent investor who owned a one-half interest in the corporation. He was not Anderson's creature and cannot be deemed to have acquiesced in whatever Anderson would do. He did not allow Anderson to dominate him beyond that domination which was inherent in the active conduct of the business by the paid president, any more than he allowed Sanford, the paid vice president and assistant secretary to dominate either him or the corporation.

▮ It may well be that because of the nature of the corporation's business and the activity of Anderson in carrying it out, coupled with Schwoebel's absence from its day to day affairs, outsiders might have had a right to rely upon authority which Anderson exercised even if in fact it had not been granted to him. That would be a case of apparent authority.

▮ But there could be no conception of apparent authority to commit fraud against the corporation and against Schwoebel's interest in it in a case such as this, in which there is no room for the application of the doctrine that as between two innocent parties the loss should be borne by the one who made it possible.[15]

Here there is no innocent third party who dealt with the corporation in reliance upon Anderson's authority and between whom and Schwoebel it might therefore be said that the greater innocence attends the one who had no part in entrusting to Anderson the power to commit the fraud.

▮ This is not a case in which an innocent party seeks to enforce a contract[16] or redress a tort[17] by attributing Anderson's wrongful conduct to the corporation. Although the fraud penalty is a civil sanction it bears a close resemblance to criminal liability, for its pur-

12. Ace Tool & Eng., Inc., 22 T.C. 833 (1954).

13. See Irving S. Federbush, 34 T.C. 740 (1960), aff'd per curiam, 325 F.2d 1 (2 Cir. 1963), where the wrongdoers who dominated the corporation owned 5/8ths of its stock.

14. See Bender v. Commissioner of Internal Revenue, 256 F.2d 771 (7 Cir. 1958), where the only innocent stockholder was the wife of the wrongdoer who owned the remaining stock, and she herself had a small share and allowed him to dominate its affairs.

15. See Bowman v. Home Life Ins. Co. of America, 260 F.2d 521 (3 Cir. 1958); Hartley v. United Mine Workers of America, 2 Pa.Dist. & Co.R.2d 1, 113 A.2d 239, 247 (C.P.Pa.1953), aff'd on opinion below, 381 Pa. 430, 113 A.2d 247 (1955).

16. See Chestnut Street Trust & Saving Fund Co. v. Record Publishing Co., 227 Pa. 235, 75 A. 1067 (1910); Restatement (Second), Agency § 165.

17. See cases cited in note 15 supra; Restatement (Second), Agency § 262.

pose is not to compensate for loss, but to punish and deter wrongful conduct.[18] The rule in contract and tort cases is founded on considerations of policy and even of social desirability.[19] Here petitioner did not contract with the government nor mislead it into innocent conduct. It obeyed the taxgatherer's command that it file a tax return. This obedience it was required to consummate through appropriate officers, as specified by the Internal Revenue Code.[20] The innocent stockholder of the corporation was no more responsible for the fraud than was the government. By joining in the designation of Anderson as an officer empowered to sign the return he was no more responsible for Anderson's fraud than was the government which specified the designated officers, or than the auditing firm which prepared the return on the basis of Anderson's fraudulent suppression of the records of his embezzlement. Schwoebel was as much defrauded as was the Treasury and it would be piling additional injury upon an innocent stockholder to require that the corporation in which he invested should bear the burden of assessments based upon the fraud which Anderson committed in the name of the corporation as a subordinate element in his need to conceal his embezzlement of its funds.

We hold that the corporation is not chargeable with Anderson's fraud and that the assessments for fraud therefore must be set aside.

The decision of the Tax Court will be reversed.

18. See United States v. Ridglea State Bank, 357 F.2d 495, 499–500 (5 Cir. 1966), involving the False Claims Act, 31 U.S.C. § 231. Although Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1939), held that the fraud penalty was not a criminal sanction because of a separate criminal provision and therefore not within the principles of double jeopardy or res judicata, nevertheless, the wrong which the remedy seeks to redress is an injury to the public welfare and is not analogous to a tort. And in general courts are less willing to impose criminal penalties on principals for the misdeeds of their agents, especially where specific wrongful intent is required, than to impose civil liability where the agent was advancing his own rather than the corporation's interest. See United States v. Ridglea State Bank, supra, 357 F.2d at 498–499. See Restatement (Second), Agency, § 216, comment a, § 217D, comment d.

19. See United States v. Ridglea State Bank, supra, note 18, at 499.

20. 26 U.S.C. § 6062.