**ASPHALT INDUSTRIES, INC.,**
Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 17470.

United States Court of Appeals
Third Circuit.

Argued Feb. 4, 1969.

Decided May 14, 1969.

Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa.

(Robert M. Taylor, Philadelphia, Pa., on the brief), for appellant.

Loring W. Post, Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before KALODNER, GANEY and SEITZ, Circuit Judges.

OPINION OF THE COURT

KALODNER, Circuit Judge.

The critical question presented is whether the Tax Court correctly held that theft losses sustained by the petitioner Asphalt Industries, Inc. by reason of diversion of its funds were deductible as a "loss from theft" under Section 165 (a), (e) of the Internal Revenue Code of 1954 [1] only during the taxable year in which they were discovered.

Section 165 "Losses" provides:

"(a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

"(e) Theft losses.—For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss."

These undisputed facts are relevant to our disposition:

Petitioner is a Pennsylvania corporation. During the taxable year here involved—the fiscal year ending February 29, 1960—petitioner's stock was owned in equal shares by its then president, Conrad V. Anderson, Jr. and its secretary-treasurer, Richard Schwoebel. Petitioner's day-to-day operations were conducted by Anderson and its vice-president and assistant secretary, one Arthur Sanford.

Anderson died on November 12, 1960. Thereafter, in December 1960 or Jan-

---

1. 26 U.S.C.A. Sec. 165(a), (e).

uary 1961, Schwoebel, who succeeded Anderson as petitioner's president, discovered that Anderson had cashed for his own use customers' checks made payable to petitioner during the petitioner's 1960 fiscal year and for some five preceding years.

Petitioner promptly notified the Internal Revenue Service of its discovery since its books and income tax returns had not reflected as corporate "income" the diverted and converted funds. The Internal Revenue Service then made deficiency assessments totalling $96,172.84, and imposed fraud penalties aggregating $52,674.18 for the fiscal years ending February 28, 1955 through February 29, 1960. In sustaining the deficiency assessments and fraud penalties the Tax Court ruled that petitioner was not entitled to theft-loss deductions under Section 165 for the years in question, on the ground that they could be claimed only in the year in which they were discovered. 46 T.C. 622 (1966).

This Court, at 384 F.2d 229 (1967), held (p. 235): " * * * the corporation is not chargeable with Anderson's fraud and that the assessments for fraud therefore must be set aside," and ruled that "The decision of the Tax Court will be reversed."

Upon the remand which followed, the Tax Court in a Memorandum Opinion,[2] subscribed to the contention of the Internal Revenue Service that we had at 384 F.2d 229 only reversed the fraud assessments for the years 1955–1960, inclusive, and as a necessary concomitant barred the deficiency assessments for the years 1955–1959, and had let stand the "basic deficiency" of $13,819.39 for the fiscal year ending February 29, 1960. The Tax Court then entered its deci-

sion sustaining the 1960 deficiency assessment of $13,819.39.

The instant petition for review followed.

The sum of petitioner's position is that (1) this Court did not at 384 F.2d 229 rule with respect to the 1960 deficiency assessment; and (2) it is entitled to claim a theft-loss deduction for the taxable year ending February 29, 1960, even though the loss was not discovered until later.

The Commissioner, in reply, contends that we had in our earlier opinion let stand the 1960 deficiency assessment, and assuming *arguendo* that we had not done so, that the theft-loss deduction could be claimed under Section 165 only for the taxable year in which it was discovered, and not the 1960 taxable year in which it occurred.[3]

We must immediately note with respect to the parties' conflicting views as to what we decided at 384 F.2d 229, that we there made it clear that we were confining our disposition to the question of the imposition of the fraud penalties against the petitioner, and the concomitant question of the deficiency assessments for the years of 1955 to 1959, inclusive.

Moreover, we expressly stated that "we put aside the interesting and important question of the effect of the change made by the 1954 Code, which altered the time for deduction from the year in which the theft occurred to the year of its 'discovery'." 384 F.2d 233.

What has been said brings us to the critical question as to whether the theft losses are deductible only in the year in which they are discovered.

Prior to enactment of the 1954 Code, loss deductions were authorized only for

---

2. Asphalt Industries, Inc. v. Commissioner, T.C. Memo. 1968–155 (July 23, 1968).

3. The Commissioner also contends that petitioner has not established that Anderson's conversion of its funds amounted to

"embezzlement", and, further, that there is a reasonable prospect that petitioner will recover the misapplied funds in a suit which it has filed against Anderson's estate. We do not reach these contentions in the light of our disposition.

losses "sustained during the taxable year." The Treasury Regulation interpreting this provision provided: "A loss from theft or embezzlement occurring in one year and discovered in another is *ordinarily* deductible for the year in which sustained." (emphasis supplied). Thus, the general policy of the Treasury was to treat a loss as sustained in the year in which the theft or embezzlement occurred. Under this Regulation, however, the Treasury in many instances allowed deductions for embezzlement losses in years subsequent to those in which the thefts occurred. Likewise, the courts, faced with the consideration that discovery might be made years after the embezzlement occurred and with the difficulty at times in ascertaining exactly when the embezzlement occurred, adopted a flexible approach in determining when a loss was "sustained." This problem culminated in the Supreme Court's decision in Alison v. United States, 344 U.S. 167, 73 S.Ct. 191, 97 L.Ed. 186 (1952), in which the Court eschewed any "inflexible rule." The Court declared (p. 170, 73 S.Ct. p. 192):

> "Whether and when a deductible loss results from an embezzlement *is* a factual question, a practical one to be decided according to surrounding circumstances. * * * An inflexible rule is not needed; the statute does not compel it. For years the Treasury has administered the tax law under regulations saying that deductions shall 'ordinarily' be taken in the year of embezzlement. Ordinarily does not mean always."

The IRS responded to the *Alison* decision by ruling that theft deductions could be taken in the year of discovery in situations in which it was impossible to determine when the embezzlement occurred and in those in which the discovery was "many years" after the embezzlement and "undue hardship or injustice would result if the loss were allowed only in the years the embezzlements occurred." Rev.Rul. 183, Cum. Bull. 1953–2, at 143. The Service was careful to point out, however, that "this exception does not provide taxpayers with an option to select the taxable year in which the deduction of the loss is to be allowed for tax purposes."

The 1954 Code provision dealing with theft losses was thus enacted against a background of existing law in which a taxpayer could not be certain in which year an embezzlement theft loss could be taken. Prior thereto, though relief had been granted on an *ad hoc* basis in individual cases, the courts and the Treasury were still groping with the problem of what to do when a theft loss was not discovered until after the taxpayer was barred from claiming a deduction in the year of occurrence. "Doubtless in the interest of producing a more realistically enforceable rule, the 1954 Code shifted the focus of deductibility from the year of sustainment to the year of discovery." Mertens, Federal Income Taxation Commentary: Section 165, at 201–202.

After stating the general rule in Section 165(a) that a deduction will be allowed for losses "sustained during the taxable year," the 1954 Code goes on to provide in Section 165(e): "For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." The IRS has construed this as meaning that a theft-loss deduction can be taken *only* in the year of discovery. Treas.Reg. § 1.-165–8(a). This interpretation of Section 165(e) is not only supported by analysis of the pre-existing law, but by the legislative history relating to that section. Thus, the House Report on the section stated:

> "The regulations under present law indicate that generally ordinary losses can be taken only in the year in which they are sustained. In embezzlement and other theft losses, however, the taxpayer may not find out about the loss until the statute of limitations has run for the year in which the loss was incurred.

"The committee has adopted a provision which provides that theft losses can be deducted in the year in which the taxpayer discovers the loss, *and only in that year.*

\* \* \* \* \* \*

"Subsection (e) is a new provision for the treatment of theft losses. There was no comparable statutory provision in the 1939 code. Regulation 118, section 39.43–2 provides that a loss from theft or embezzlement is ordinarily deductible for the year in which sustained. There has been considerable uncertainty and litigation about the application of this rule. Under the new provision, the loss will always be deductible in the year in which the taxpayer discovers the loss. The rule will, of course, also apply to embezzlement, larceny, etc. \* \* \*" H.R. No. 1337, 83d Cong., 2d Sess., pp. 21 & A46 (1954), reprinted in 3 U.S. Code Cong. & Admin.News 4017, 4045–4046, 4183 (1954) (emphasis supplied).

This same language is contained in the Senate Report. Senate Rep. No. 1622, 83d Cong., 2d Sess., pp. 23 & 198 (1954), reprinted in 3 U.S. Code Cong. & Admin. News 4621, 4653, 4833 (1954). See also 5 Mertens, Federal Income Taxation § 28.59, at 244; Mertens, Federal Income Taxation Commentary: Section 165, at 201–202.

In view of the clear legislative history and the context in which Section 165(e) was enacted, the Treasury Regulation providing that theft losses can be deducted only in the year of discovery is clearly valid. See Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1931).

For the reasons stated, the decision of the Tax Court will be affirmed.