SAM BERMAN AND EVA BERMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Berman v. Commissioner
Docket Nos. 5241-90, 5242-90, 24234-90, 24235-90, 9707-91, 9708-91, 24313-91, 24314-91
United States Tax Court
T.C. Memo 1993-629; 1993 Tax Ct. Memo LEXIS 647; 66 T.C.M. (CCH) 1798; December 28, 1993, Filed *647 Decision will be entered under Rule 155. For petitioners in docket No. 5241-90. [2]: Richard A. Osserman, Nathan M. Silverstein, Ronald C. Osach, Kurt F. Zimmermann, and Robert P. Rivers. For petitioners in remaining docket Nos.: Richard A. Osserman and Robert P. Rivers. For respondent: Robert E. Marum. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies and additions to petitioners' income tax as follows: Eva Berman
Additions to Tax
Sec.
Sec.
Year
Docket No.
Deficiency
6653(b)(1) [1]
6653(b)(2) [2]
Sec. 6661
1983
24234-90
$  53,197.76
$ 24,598.88
[3]
$ 13,299.44
1984
9708-91
17,671.00
8,836.00
[3]
4,418.00
1985
5241-90
132,363.00
66,182.00
[3]
33,091.00
1986
5241-90
52,376.00
39,282.00
[3]
13,094.00
1987
24313-91
46,040.00
34,530.00
[3]
11,510.00
Friendly Farms, Inc.
Additions to Tax
Sec.
Sec.
Year
Docket No.
Deficiency
6653(b)(1) [1]
6653(b)(2) [2]
Sec. 6661
1983
24235-90
$  15,770.60
$  7,885.30
3
$  3,942.65
1984
9707-91
14,013.00
7,007.00
3
3,503.00
1985
5242-90
110,337.00
55,169.00
3
27,584.00
1986
5242-90
36,227.00
27,170.00
3
9,057.00
1987
24314-91
63,466.00
47,559.50
3
15,866.50
*648 Respondent determined deficiencies for Sam and Eva Berman. Sam Berman conceded the deficiencies and additions to tax. After concessions, the following issues remain to be decided: 1. Whether Eva Berman is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983 to 1985 and section 6653(b)(1)(A) and (B) for 1986. [3] We hold that she is not. 2. Whether Eva Berman is liable for the addition to tax for substantial understatement of tax under section 6661 for the years in issue. We hold that she is. 3. Whether Eva Berman qualifies as an innocent spouse under section 6013(e) for any of the years in issue. We hold that she does not. 4. Whether Friendly Farms, Inc., is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983 to 1985 and section 6653(b)(1)(A) and (B) for 1986. [4] We hold that it is. *649 5. Whether Friendly Farms, Inc., is liable for the addition to tax for substantial understatement of tax under section 6661 for the years in issue. We hold that it is. References to petitioner in the singular are to Eva Berman. References to the Bermans are to petitioner and Sam Berman. Section references are to the Internal Revenue Code in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Eva and Sam Berman
Petitioner resided in Norwalk, Connecticut, when she filed her petitions. She was born in Hungary in 1924 and married in Budapest in 1948. She attended school through the fourth year of high school in Europe. She moved to Palestine in 1948, Israel in 1949, and later to the United States. Petitioner married Sam Berman in 1952 and they had two children, Joseph and Hennya, and another who died. She worked in the United States as a seamstress and designer and later at several department stores. While she lived in the United States, petitioner owned an apartment in Israel from the early 1970s through the time of trial. Before and *650 during the years in issue she usually had one bank account by herself. She had signature authority over two Fairfield County Savings accounts during the years in issue. 2. Friendly Farms, Inc.
The Bermans opened a convenience store and delicatessen called Friendly Farms Food Store (the store) in Norwalk, Connecticut, as a sole proprietorship around 1967. The store had five aisles, a walk-in cooler, and a delicatessen counter with a cash register. The store carried goods such as produce, beer, dairy products, tobacco products, and pharmacy items. It was open 7 days a week from 6:30 a.m. to 10 p.m. Initially, the Bermans rented the store from two physicians. They later bought the land and building after petitioner suggested that it would be financially prudent for them to do so. Sam Berman worked at the store about 70 to 80 hours a week during the years in issue. He generally opened the store at 6:30 a.m. every day and worked until about 2 p.m. He usually returned to the store in the evening and closed it at 10 p.m. He supervised the store employees and set salaries. He established the store's financial procedures, collected the cash receipts, made bank deposits, and *651 was responsible for keeping the register tapes and keeping records of cash payments to vendors. Before 1986, only Sam Berman had signature authority over the store's accounts. He kept the check books and wrote most of the checks. Petitioner's son, Joseph Berman, began working at the store when he was 16 years old. Initially, he earned $ 4 per hour. He had worked at the store 20 years as of the date of trial. Initially, he did everything at the store except handling the finances. During the years in issue, Joseph Berman assumed increased responsibility for financial matters such as making deposits, writing paychecks to himself when his father was not available, and giving information to the store's accountants. Joseph Berman could withdraw funds from the store's accounts beginning in 1986. After the years in issue, Joseph Berman assumed all responsibility for running the store. Petitioner was involved in establishing and running the store. Petitioner initially worked at the store about 5 hours a day, 5 days a week. Later, she worked 1 or 2 hours per week. Petitioner took home anything she needed from the store but did not pay for it or record it. The Bermans and Joseph *652 Berman initially did all the work themselves. The store later also had one full-time employee and two part-time employees. The employees watched the store, operated the register, prepared deli foods, and stocked shelves. The store dealt primarily in cash. The store had one cash register. It could not work without a tape. Employees placed all receipts from customers in the cash register. Cash received at the store during the day was counted by adding the tapes. When vendors delivered goods to the store, Joseph Berman or one of the employees paid them in cash from the cash register. The vendors' invoices were marked paid and served as a record of payment. The payments were not recorded in the store's books. Joseph Berman and the store's employees knew and followed the procedure that when Sam Berman was not at the store to collect the cash at the end of the day, employees placed it in a paper bag, stapled it, and hid it in the store. Sam Berman chose the hiding places. He took the bag the following day, but he did not record the receipts. Only Sam Berman counted the money in the bag. The store had checking accounts at Merchants Bank & Trust (Merchants Bank). At least *653 one of the accounts at Merchants Bank and Fairfield County Savings was jointly held by petitioner and Sam Berman. Petitioner had signature authority over a Fairfield County Savings account. The Bermans incorporated Friendly Farms, Inc. (Friendly Farms), on March 8, 1983, in Connecticut, in part to minimize civil liability. Petitioner owned 40 percent of Friendly Farms' stock initially and during the years in issue, Sam Berman owned 40 percent, and Joseph Berman owned 20 percent. Joseph Berman was president, Sam Berman was vice president, and petitioner was treasurer. There were no other officers. The Bermans and Joseph Berman were officers and employees. They did not change how they operated the store from its inception through the years in issue. Friendly Farms did not keep corporate minutes, hold meetings of the board of directors, or observe any other corporate formalities. Sam Berman skimmed gross receipts from Friendly Farms and deposited those funds in various bank accounts for personal use by the Bermans during the years in issue. Neither Friendly Farms nor the Bermans reported the skimmed cash as income on their income tax returns. 3. Petitioners' Income Tax *654 Returns
The Bermans filed joint Federal income tax returns for the years in issue. Guy A. McKenna (McKenna), a certified public accountant, prepared their returns. The Bermans did not report receiving dividend income from their store for any of the years in issue. The Bermans reported the following income: Wages from the Store
Income From
Year
Petitioner
Sam Berman
Interest
Dividends
1983
$   800
$ 1,125
$  5,244
$  1,494
1984
1,200
2,250
5,063
914
1985
600
1,125
11,706
16,405
1986
0
0
4,387
26,219
1987
0
0
2,473
19,471
During this time, Sam Berman worked 70 to 80 hours per week and petitioner worked 1 or 2 hours per week. McKenna prepared Friendly Farms' income tax returns for the years in issue. These tax returns were signed by Joseph or Sam Berman. Neither Friendly Farms nor the Bermans reported the following bank deposits or cash payments to vendors on any income tax returns: Deposits In--
Payments to
Year
Merchants Bank
Fairfield Savings
Vendors
1983
$ 108,650.00
$ 7,646.00
$   223,509
1984
53,546.00
6,317.00
320,486
1985
283,475.91
3,862.60
152,218
1986
113,544.90
277.18
142,222
1987
30,007.72
0
404,162
Total
589,224.53
18,102.78
1,242,597
*655 Thus, petitioners did not account for a total of $ 1,764,247.86 on their returns for the years in issue. Of this amount, $ 598,444.95 was deposited in the Bermans' personal bank accounts. Petitioners could not identify the sources of these bank deposits. Friendly Farms incorrectly reported on its 1984, 1985, and 1986 tax returns that petitioner devoted 100 percent of her time to the business, and that petitioner and Joseph Berman each owned 50 percent of the corporation's common stock. Friendly Farms incorrectly reported on its 1987 return that Joseph Berman owned 10 percent of the common stock. Friendly Farms did not report on its tax return for 1983 how much time petitioner devoted to the business. The 1986 and 1987 returns state Sam Berman was treasurer when he was vice president and petitioner was treasurer. Petitioners filed their income tax returns for 1986 and 1987 after the audit of their 1983 returns began. 4. Petitioners' Financial Resources and Lifestyle
In 1972, Sam Berman gave petitioner $ 100,000 to $ 110,000. In 1983, the Bermans bought stock costing $ 146,026. They vacationed in Israel for 4 to 6 weeks in 1983 and each of the years in issue. They *656 vacationed in the Catskills once every year or two during the years in issue. Sam Berman paid for the vacations. Around 1982, Sam Berman bought a Chevrolet Caprice with 30,000 miles. Petitioner used it as her car from 1983 to 1987. The Bermans bought a $ 10,675 greenhouse for their home in 1985. In 1985, the Bermans sold a building on Grove Street, in Norwalk, Connecticut. Petitioner received between $ 116,000 and $ 119,000 from the sale and invested it in 1985 with A.G. Edwards and Sons, Inc., where she opened an account in her own name. She made her own trading decisions for this account. The Bermans reported $ 500,199 as proceeds from sales of capital assets in 1985. On September 27, 1985, the Bermans bought a house on Spruce Street, in Norwalk, Connecticut, for $ 149,306. On August 15, 1985, petitioners bought a condominium on Truman Street in Norwalk for $ 60,575. On February 27, 1986, they sold the Truman Street condominium for $ 64,324. On April 11, 1986, they sold the Spruce Street house for $ 152,768. On their income tax return for 1987 the Bermans reported that they sold stock held short term for $ 1,058,679 and long term for $ 217,508. Petitioner knew that *657 her husband bought and sold stock and real estate during the years in issue, but she did not know the extent of his dealings. The Bermans did not receive any inheritances during the years in issue. The Bermans divorced in 1991. Petitioner received the following property from Sam Berman as a result of their divorce: A 40-percent interest in Friendly Farms, the land on which the store is located, her condominium free of mortgage, and a car which was worth $ 10,000. As of the date of trial, she received $ 1,100 per month from the business. She was capable of interpreting a stock brokerage account statement at trial. OPINION 1. Fraud by Petitioner
Respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983, 1984, and 1985, and section 6653(b)(1)(A) and (B) for 1986. Sam Berman conceded that he is liable for the additions to tax for fraud. However, fraud is not imputed from one spouse to another. Sec. 6653(b)(3); Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972). As discussed next, we conclude respondent has not clearly *658 and convincingly proven that petitioner committed fraud. For purposes of section 6653(b), fraud means "actual, intentional wrongdoing," Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent must prove that there was an underpayment, Parks v. Commissioner, 94 T.C. 654, 660 (1990), and that the taxpayer intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent tax collection, Stoltzfus v. United States, 398 F.2d 1002, 1004-1005 (3d Cir. 1968); Parks v. Commissioner, supra at 661; *659 Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). a. Underpayment
The parties agree that petitioner underpaid income tax for each of the years in issue. Thus, respondent meets the first requirement for proving fraud against petitioner. b. Fraudulent Intent
Since direct proof of the taxpayer's intent is rarely available, fraudulent intent may be proved by circumstantial evidence and reasonable factual inferences. Spies v. United States, 317 U.S. 492, 499 (1943). Fraud may be inferred from any conduct the effect of which is to mislead or conceal or otherwise to prevent the collection of taxes. Spies v. United States, supra; Webb v. Commissioner, supra.
Respondent asserts that the evidence shows that petitioner was intelligent and financially sophisticated and had intimate knowledge of the store. Respondent asks us to infer that petitioner intended to evade taxes because during the years in issue: (1) Sam Berman skimmed a large amount of corporate gross receipts; (2) false wages were reported on the returns and Forms W-2; (3) the Bermans *660 had an expensive lifestyle and their wealth increased; and (4) petitioner took food from the store without paying or accounting for it. Respondent did not show that petitioner knew about Sam Berman's skimming from the store. We could speculate either way based on the record, but that is not sufficient to support a finding of fraud. Petitioner was a shareholder and corporate officer of Friendly Farms. However, there is no indication that her stock ownership or status as an officer had any significance relating to the actual operation of the business or caused her to learn of Sam Berman's skimming of profits. Petitioner's lifestyle is insufficient to prove that she intended to evade tax. Petitioner's wealth increased during the years in issue, but it is not clear whether she knew it increased or how much it increased. Petitioner knew that her husband invested in stocks and real estate, but it is not clear that she knew the extent of his dealings. Taking items from the store without accounting for them and Friendly Farms' Forms W-2 do not establish fraudulent intent by clear and convincing evidence. Joseph Berman testified that in 1986 he overheard his parents arguing whether *661 his father was taking money without depositing it. Respondent contends that this shows that she had fraudulent intent with respect to the Bermans' return for 1986, which was filed after that time. We disagree. This is too vague an indication of what petitioner knew and intended to support a finding of fraud. We conclude that respondent has not proven by clear and convincing evidence that petitioner intended to evade income tax for the years in issue. Thus, we hold that petitioner is not liable for the addition to tax for fraud under section 6653(b)(1) and (2) for 1983, 1984, and 1985, or section 6653(b)(1)(A) and (B) for 1986. 2. Innocent Spouse
Petitioner argues that she is entitled to innocent spouse relief under section 6013(e) for the years in issue. To qualify as an innocent spouse, petitioner must prove that: (1) She filed a joint return for the years in issue; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return; (3) she did not know or have reason to know of the substantial understatement when signing the return; and (4) it is inequitable to hold her liable for the deficiency attributable *662 to the substantial understatement. Sec. 6013(e)(1). Failure to meet any of these requirements precludes a taxpayer from qualifying as an innocent spouse. Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310; Estate of Jackson v. Commissioner, 72 T.C. 356, 362 (1979). We conclude that petitioner failed to show that it would be inequitable to hold her liable for the deficiency and additions to tax for the years in issue, based on the facts and circumstances. Sec. 6013(e)(1)(D). Thus, we need not consider the other requirements of section 6013(e). In deciding whether it is inequitable to hold a spouse liable for a deficiency, we consider whether the purported innocent spouse significantly benefited beyond normal support, either directly or indirectly, from the items omitted from gross income. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), *663 affd. 826 F.2d 470 (6th Cir. 1987); H. Rept. 98-783 (Part 2), at 1142, 1143-1145, 1501-1502 (1984); Sec. 1.6013-5(b), Income Tax Regs. Normal support is determined in the context of the circumstances of petitioners. Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975); Flynn v. Commissioner, 93 T.C. 355, 367 (1989). Petitioner argues that she had a very low standard of living and that her husband was a pennypincher. She testified that she lived an extremely austere and frugal lifestyle without any disposable money. We disagree. Petitioner enjoyed a substantial increase of wealth during the years in issue. In those years, the Bermans received large amounts of interest and dividends, bought and sold real property, large amounts of stock, and municipal bonds, and opened margin accounts. They added a solar greenhouse to their home in 1985 for $ 10,675. In 1985, petitioner received between $ 116,000 and $ 119,000 from the sale of the Grove Street building. She was a joint owner of the Spruce Street house that they purchased in 1985 for $ 149,306 and the Truman Street property that *664 they bought in 1986 for $ 60,575. Petitioner took a 4- to 6-week vacation each year to Israel, and vacationed in the Catskills. Unusual support or transfers of property to the spouse are considered even if the benefit is received several years after the years in issue. Hayman v. Commissioner, supra; Estate of Krock v. Commissioner, 93 T.C. 672, 679 (1989); S. Rept. 91-1537 (1970), 1971-1 C.B. 606, 607-608. Petitioner received Sam Berman's 40-percent interest in Friendly Farms and all of his interest in the land on which the store is located, a condominium free of a mortgage, and an automobile worth $ 10,000. Petitioner asserts that it would be inequitable for her to be liable for the deficiencies and additions to tax because she claims that her husband had hidden $ 450,000 when they divorced. She bases this claim on an alleged blurted statement made by Sam Berman to her attorney about "the other $ 450,000". We are not convinced by this record that Sam Berman hid $ 450,000 from her. We conclude that it is not inequitable to hold petitioner liable for these deficiencies and additions *665 to tax. Thus, we hold that petitioner is not entitled to relief as an innocent spouse under section 6013(e). 3. Fraud by Friendly Farms
Respondent determined that Friendly Farms is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983, 1984, and 1985, and section 6653(b)(1)(A) and (B) for 1986. As stated earlier, respondent has the burden of proving fraud by clear and convincing evidence, sec. 7454(a); Rule 142(b), and must prove that there was an underpayment and that the taxpayer intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent tax collection. a. Underpayment
Petitioners stipulated that Friendly Farms understated its gross income for each of the years in issue. Thus, we find that respondent has shown that Friendly Farms underpaid income tax for those years. b. Fraudulent Intent
Respondent must prove that Friendly Farms intended to evade a tax known to be owing. Parks v. Commissioner, 94 T.C. at 661. The existence of fraudulent intent by a corporation is determined by the acts of its officers because the corporation has no intent separate from those who control *666 it. E.J. Benes & Co. v. Commissioner, 42 T.C. 358, 382 (1964), affd. 355 F.2d 929 (6th Cir. 1966). There is no dispute that Sam Berman committed fraud during the years in issue by skimming cash from Friendly Farms' gross receipts and that Sam Berman completely dominated Friendly Farms. Petitioner argues that the corporation is not liable for fraud because it was the victim of a theft by Sam Berman. Specifically, petitioner contends that Sam Berman was stealing money but the other stockholders did not know about it. To decide whether to impute the fraudulent intent of a dominant shareholder or agent where he diverts corporate receipts for private use, The pertinent questions are (1) whether the corporate agent so controlled the corporation that the corporate entity is destroyed and the corporation becomes the individual's alter ego, and (2) whether the agent was acting in behalf of and not against the corporation with the result that the corporation benefited from his fraudulent acts. If either (1) or (2) applies, the fraud of the agent may be imputed to the corporation. [Citations omitted.]
Ruidoso Racing Association, Inc. v. Commissioner, 476 F.2d 502, 506 (10th Cir. 1973), *667 affg. in part and revg. and remanding in part T.C. Memo. 1971-194; Moore v. Commissioner, T.C. Memo. 1977-275, affd. 619 F.2d 619 (6th Cir. 1980). Sam Berman dominated Friendly Farms to the extent that it was his alter ego. We reject petitioner's theory that she was a victim. Sam Berman and petitioner directly benefited from Sam Berman's diversion of gross receipts. Joseph Berman was Friendly Farms' president. He signed corporate returns and ultimately replaced his father in managing the store. Petitioners rely on Asphalt Indus., Inc. v. Commissioner, 384 F.2d 229, 235 (3d Cir. 1967), revg. 46 T.C. 622 (1966), and Botwinik Bros. v. Commissioner, 39 T.C. 988 (1963). In Asphalt Indus. v. Commissioner, supra, two unrelated individuals each owned 50 percent of the corporation's stock. One embezzled corporate funds. The other did not know about or benefit from the embezzlement. Similarly, in Botwinik Bros. v. Commissioner, supra, the Court *668 held that a minority shareholder who owned 5.33 percent of the corporation's common stock misappropriated corporate funds and that the theft was adverse to the corporation and remaining shareholders. In contrast, here, petitioner benefited from Sam Berman's actions. Thus, Asphalt Indus. and Botwinik Bros. do not support petitioner's position. We hold that Friendly Farms is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983, 1984, and 1985, and section 6653(b)(1)(A) and (B) for 1986. 4. Substantial Understatement of Tax by Friendly Farms
Respondent determined that Friendly Farms is liable for the addition to tax for substantial understatement of tax under section 6661 for the years in issue. If assessed after October 21, 1986, the addition is 25 percent of any underpayment attributable to the understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 502-503 (1988). A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b). Petitioners bear the burden of proving that this addition to tax does not apply. *669 Rule 142(a). If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Respondent may waive the addition if the taxpayer shows reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). Petitioners do not argue that Friendly Farms is not liable under section 6661 or that any of the exceptions apply. Thus, we hold that Friendly Farms is liable for additions to tax under section 6661 for the years in issue. To reflect concessions and the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith for trial, briefing, and opinion: Friendly Farms, Inc., docket Nos. 5242-90, 24235-90, 9707-91, 24314-91; Eva Berman, docket Nos. 24234-90, 9708-91, 24313-91; and Sam Berman, docket Nos. 24627-90, 9654-91, 21478-91. Docket Nos. 24627-90, 9654-91, and 21478-91 were severed after the Court received executed decisions in this case.↩
2. Messrs. Silverstein, Osach, and Zimmermann withdrew as counsel for Eva Berman in docket No. 5241-90.↩
1. Respondent determined this addition for 1986 and 1987 under sec. 6653(b)(1)(A).↩
2. Respondent determined this addition for 1986 and 1987 under sec. 6653(b)(1)(B).↩
3. Fifty percent of the interest due on the deficiency.↩
3. Respondent conceded fraud for 1987.↩
4. Respondent conceded fraud for 1987.↩