In the Matter of AMERICAN BIOMA-
TERIALS CORPORATION, a Vir-
ginia Corporation, Debtor.

In the Matter of HELITREX COR-
PORATION, a New Jersey
Corporation, Debtor.

In the Matter of CREATIVE CARE
SYSTEMS, INC., a New Jersey
Corporation, Debtor,

United States of America, Appellant.

No. 90–5721.

United States Court of Appeals,
Third Circuit.

Argued Jan. 23, 1991.

Decided Jan. 23, 1992.

**920**

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, David A. Hubbert (argued), Tax Div., Dept. of Justice, Washington, D.C. (Michael Chertoff, U.S. Atty., D.N.J., of counsel), for appellant.

Alan L. Augulis (argued), Nola R. Bencze, Jamieson, Moore, Peskin & Spicer, Princeton, N.J., for appellee.

Before BECKER and HUTCHINSON, Circuit Judges, and SMITH, District Judge.[*]

## OPINION OF THE COURT

D. BROOKS SMITH, District Judge.

The government appeals an order of the United States District Court for the District of New Jersey affirming a bankruptcy court order denying the government statutory penalties for appellee American Biomaterials Corporation's (American's) failure to file timely tax returns and pay federal taxes duly owed. The bankruptcy court had jurisdiction of this matter under 28 U.S.C. § 157(b); the district court had jurisdiction of the appeal from the bankruptcy court under 28 U.S.C. § 158(a); this Court has jurisdiction from the final order of the district court under 28 U.S.C. § 158(d). We affirm.

## I.

American Biomaterials Corporation (American) filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, on December 2, 1987, in the Bankruptcy Court for the District of New Jersey. The Internal Revenue Service (IRS) filed a proof of claim on January 15, 1988 for unpaid income and social security taxes for the fourth quarter of 1986 in the amount of $143,055.08; for the first quarter of 1987 in the amount of $147,740.46; for the second quarter of 1987 in the amount of $113,359.02. The proof of claim also assessed American $2,965.92 in unemployment taxes for calendar year 1986. American does not dispute its liability for these amounts.

Sections 3102(a) and 3402(a) of the Internal Revenue Code, 26 U.S.C. §§ 3102(a), 3402(a), require an employer to deduct and withhold social security and income taxes from the wages paid to its employees. Federal unemployment taxes are deducted under authority of state laws approved by the Secretary of Labor. 26 U.S.C. § 3304. The taxes withheld must be held by the employer as a special trust fund for the benefit of the United States. 26 U.S.C. § 7501(a). An employer is required to deposit the social security and income taxes withheld from employees' wages in an approved bank at various intervals during a calendar quarter depending on how much is withheld. 26 U.S.C. § 6302; 26 C.F.R. 31.-6302(c)–1(a)(1). The employer is required to report the amount of withheld social security and income taxes on its payroll tax return, Form 941; the employer is required to report the amount of withheld unemployment taxes on its unemployment tax return, Form 940. The payroll tax return and a payment of employment taxes are due every calendar quarter. 26 U.S.C.

---

[*] Hon. D. Brooks Smith, United States District Judge for the Western District of Pennsylvania, sitting by designation.

§ 6011(a); 26 C.F.R. §§ 31.6011(a)–1; 31.6011(a)–4; 31.6071(a)–1(a)(1), (4). The federal unemployment tax return is due annually. 26 C.F.R. §§ 31.6011(a)–3); 31.6071(a)–1(c). Failure to comply with these statutory duties subjects an employer to interest and penalties, and the IRS in its proof of claim requested additions to the taxes due for each of the periods for which returns had not been filed and taxes had not been paid.

American filed a motion in the bankruptcy court to reduce the IRS' proof of claim by the amount of the penalties assessed. The bankruptcy court entered an order on April 20, 1989, disallowing the penalties sought by the IRS because of American's failure to file timely employment tax returns,[1] its failure to deposit employment taxes withheld from employees,[2] and for its failure to pay employment taxes to the IRS.[3] The penalties assessed by the IRS and disallowed by the bankruptcy court totaled $120,985.64.

On appeal by the IRS, the district court found that American's failure to file timely returns, make deposits and pay taxes was due to statutorily excused reasonable cause and not willful neglect. Underlying the decisions of both the bankruptcy and the district courts was the finding by the bankruptcy court that American's failure to comply with the tax laws was the result of embezzlement by American's CEO and Chairman of the Board of Directors, William MacKay, and its CFO and treasurer, Muncie Russell. Their actions, according to the district court, "incapacitated the corporation" and rendered American unable to comply with the Internal Revenue Code. The required returns were filed by American on or about July 29, 1987. The delinquent tax liabilities have not yet been paid.

## II.

Our review of the district court's conclusion of law that American's failures to file returns and to deposit and pay taxes were due to reasonable cause is plenary. *United States v. Boyle*, 469 U.S. 241, 249 n. 8, 105 S.Ct. 687, 692 n. 8, 83 L.Ed.2d 622 (1985); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 85 (3d

---

1. Title 26 U.S.C. § 6651(a)(1) (West 1989) provides in pertinent part:

    (a) —In case of failure—

    (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), *unless it is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate[.] (emphasis added)

    Pub.L. 101–239, § 7741(a), added increased penalties to this subsection for fraudulent failures to file returns. *See* 26 U.S.C. § 6651(f)(West 1991 Supp.)

2. Title 26, U.S.C. § 6656 (West 1989), provides in pertinent part:

    (a) —In case of failure by any person required by this title or by regulation of the Secretary under this title to deposit on the date prescribed therefor any amount of tax imposed by this title in such government depositary as is authorized under section 6302(c) to receive such deposit, *unless it is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be imposed upon such person a penalty of 10 percent of the amount of the underpayment. For purposes of this subsection, the term "underpayment" means the excess of the amount of the tax required to be so deposited over the amount, if any, thereof deposited on or before the date prescribed therefor. (emphasis added)

    Pub.L. 101–239, § 7742(a) partially amended this penalty scheme. See 26 U.S.C. § 6656 (West 1991 Supp.)

3. Title 26, U.S.C. § 6651(a)(2) (West 1989), provided in pertinent part:

    (2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), *unless it is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be added to the amount shown as tax on such return 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate[.] (emphasis added)

Cir.1988). Our review of the district court's factual basis for its conclusion is for clear error. *United States v. Boyle*, 469 U.S. at 249 n. 8, 105 S.Ct. at 692 n. 8; *Universal Minerals Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981). *See Roberts v. Commissioner*, 860 F.2d 1235, 1241–42 (5th Cir.1988).

### III.

### A.

■ Initially we address the government's argument that the record does not contain sufficient evidence to support the findings of fact on which the district court based its conclusion of reasonable cause because no competent evidence was introduced in the bankruptcy and district courts that MacKay and Russell were guilty of embezzling, and that this malfeasance prevented American from fulfilling its tax obligations.

The district court had before it the record of the proceeding in the bankruptcy court which included a document captioned "Certification in Lieu of Oath or Affidavit of Gerald N. Mauder." Mauder became the president, CEO, and chairman of the board of directors of American after Mac-Kay and Russell resigned in July, 1987. Mauder averred that Russell was responsible as CFO and treasurer for American's finances, including filing tax returns and paying all taxes prior to July, 1987, and that MacKay and Russell were the only officers of American with the responsibility to file tax returns and ensure payment. At the time Russell resigned, Mauder averred, Russell informed American that he had not filed returns or paid the taxes on which the IRS seeks the assessment of penalties. Mauder averred that American is currently up to date in its filings and tax payments, and that the late tax returns were filed on July 29, 1987. Mauder stated that American had suffered operating losses for the fiscal year ending October 31, 1984, in the amount of $1,751,233.00; for the fiscal year ending October 31, 1985, in the amount of $3,333,803.00; for the fiscal year ending October 31, 1986, in the amount of $7,374,226.00; and for fiscal

year 1987 through July 31, 1987, in the amount of $5,849,742.00. Mauder also asserted that American could not in 1987 have paid its tax liability without selling its sole significant corporate asset, its collagen technology, at distress sale prices.

At the time this matter was before the lower courts MacKay and Russell were only alleged embezzlers, but since that time they have entered pleas of guilty to charges of embezzling from American. The normal rule that this court considers only the factual record before the district court, Fed.R.App.P. 10; *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir.1986), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987), "is subject to the right of an appellate court in a proper case to take judicial notice of new developments not considered by the lower court." *United States v. Lowell*, 649 F.2d 950, 966 n. 26 (3d Cir.1981), *quoting Landy v. Federal Deposit Insurance Corp.*, 486 F.2d 139, 151 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). We take judicial notice of their guilty pleas in affirming the district court's finding that MacKay and Russell were embezzling from American. *See* Fed. R.App.P. 10(e); *In re: Capital Cities/ ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 97 (3d Cir.1990); *Castle v. Cohen*, 840 F.2d 173, 180 n. 12 (3d Cir.1988).

### B.

■ The district court inferred from the Mauder affidavit that the embezzlements of MacKay and Russell incapacitated American and rendered it unable to file its tax returns and pay taxes due. This factual inference, given the absence of evidence to the contrary from the government, is not clearly erroneous. MacKay and Russell were the only two corporate officers with responsibility for American's tax filings, and according to Mauder's uncontradicted affidavit, there was only one accountant other than Russell employed by American, who was employed only between March and July, 1987.

## IV.

### A.

█ American's inability to timely file returns and make deposits and payments of taxes due only begins the analysis necessary to decide whether American is liable for the penalties provided in the Code. "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect' and (2) that the failure was due to 'reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985). *See* 26 U.S.C. §§ 6651(a)(1), (2), 6656; *See also* 26 C.F.R. §§ 301.6651–1(c)(1)(1984), 301.6656–1.

The government relies on *United States v. Boyle* (misplaced reliance by the executor of an estate on the estate's attorney to file the estate tax return was not reasonable cause) and *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (tortious actions of a corporation's agents subject the corporation to liability). The government argues they establish as a matter of law that Russell and MacKay's malfeasances are imputed to American and therefore cannot constitute reasonable cause. American, by contrast, argues that its board of directors reasonably relied on the oversight of the corporation's financial affairs by an independent accountant, that the corporation's 1984–87 operating losses also resulted from the embezzlements of Russell and MacKay, and therefore that its noncompliance with the tax code was as excusable as if American were an individual who is rendered incompetent by mental or physical disability. *See e.g. Brown v. United States*, 630 F.Supp. 57 (M.D.Tenn.1985). Both arguments miss the mark somewhat.

### B.

In *United States v. Boyle*, the Supreme Court established a bright line rule that reliance on an agent to file a timely return when the due date of the return was ascertainable by the taxpayer does not constitute reasonable cause excusing the taxpayer from statutory penalties for late filing. The court, however, expressly distinguished the question of the taxpayer's misplaced reliance on an agent to perform a known duty from the question of the taxpayer's disability, 469 U.S. at 248–49 n. 6, 105 S.Ct. at 691–92 n. 6; *see also id.* at 255, 105 S.Ct. at 694 (concurring opinion). It therefore does not suffice to conclude, as does the government, that the duties imposed by the tax laws are nondelegable; the inquiry required by the statutory term "reasonable cause" is to determine precisely the scope of those duties. *See General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 396, 102 S.Ct. 3141, 3153, 73 L.Ed.2d 835 (1982) ("In a sense, to characterize ... a duty as 'nondelegable' is merely to restate the duty.") Because a corporation is a legal entity which can act only through its agents and employees, the distinction between the corporation's unexcused failure to comply with the duties imposed by the tax laws as a result of the improper actions of its agents and the corporation's excused inability to comply with those duties as a result of misfeasance or nonfeasance by its agents requires examination of the scope of a corporation's liability for the acts of its agents.

*American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), provides a textbook introduction to the concept of corporate liability for the acts of its agents. The American Society of Mechanical Engineers (ASME) is a non-profit corporation consisting of associations of members of the mechanical engineering professions; it promulgates authoritative codes and standards frequently incorporated by governments in their regulations affecting the products of the very same engineering industry. Employees of McDonnell & Miller, Inc., a manufacturer of low-water fuel cutoffs for boilers, used their positions within ASME to draft an authoritative interpretation of regulations governing low-water fuel cutoffs that suggested that the products of McDonnell & Miller's competitor, Hydrolevel, Inc., were unsafe. Hydrolevel's recovery under the antitrust law

against ASME for the damages caused by this unfavorable evaluation of its products was reviewed by the Supreme Court. In affirming the finding of liability against ASME, the Court stated:

> [U]nder general rules of agency law, principals are liable when their agents act with apparent authority and commit torts analogous to the antitrust violation presented by this case ... [A] principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority. 456 U.S. at 565–66, 102 S.Ct. at 1942 (citations and footnote omitted).

As the Court made clear, what determined ASME's corporate liability to Hydrolevel under the antitrust laws was not the presence or absence of benefit to ASME from the agents' frauds, but rather the creation of apparent authority in the agents by ASME. *See* 456 U.S. at 567–68, 102 S.Ct. at 1943. The government argues that *ASME v. Hydrolevel Corp.*, by rejecting the concept of intent to benefit the corporation as a prerequisite for liability, implies that American had afforded Russell and MacKay apparent authority conclusive of American's liability. The holding in *ASME v. Hydrolevel Corp.* did settle that intent to benefit was not a necessary element for imposition of vicarious liability under the federal antitrust laws.[4] The liability of American for past due taxes and interest is not in dispute, however; the sole question before this Court is the extent to which the corporation may be penalized under the tax laws for its officers' delinquency.

The Supreme Court in *ASME v. Hydrolevel Corp.* went on to impose, as a matter of statutory construction, vicarious liability for treble damages on ASME for the intentional torts of its agents. 456 U.S. at 575–76, 102 S.Ct. at 1947. The government argues that we should similarly require the imposition of statutory tax penalties on American for the embezzlements of Russell and MacKay. This argument, however, ignores a well settled limitation on the scope of vicarious liability for an agent's intentional torts where the intentionally tortious or criminal acts of the agent are directed against the corporation itself.

### C.

Following *ASME v. Hydrolevel Corp.*, the majority of courts have held that imposition of vicarious liability for punitive and exemplary damages is proper when an employee or agent acts within the scope of employment or with apparent authority; a minority of courts follow the more restrictive formula of Section 909 of the Restatement (2d) of Torts, also codified at Restatement (2d) of Agency § 217C, which allows imposition of punitive damages on the employer or principal if the agent "was employed in a managerial capacity and was acting in the scope of employment." Restatement (2d) of Torts § 909(c); Restatement (2d) of Agency § 217C(c). *See Matter of P & E Boat Rentals, Inc.*, 872 F.2d 642, 650–51 (5th Cir.1989); *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 354–55 (1st Cir.1988); *Protectus Alpha Navigation Co., Ltd. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1386–87 (9th Cir.1985) (collecting cases). *See also ASME v. Hydrolevel Corp.*, 456 U.S. at 582–83, 102 S.Ct. at 1951 (Powell, J., dissenting).

In every jurisdiction, however, for punitive damages to be imposed vicariously on the employer, the employee must be acting within the scope of the employment. *See e.g. Chuy v. Philadelphia Eagles Football Club, Inc.*, 595 F.2d 1265, 1278 (3d Cir. 1979).[5] And in no jurisdiction that our

---

**4.** As the dissent in *ASME v. Hydrolevel* noted, there is significant common law precedent for requiring an intent to benefit before any vicarious liability can be imposed on the principal for the intentional torts of an agent. *See* 456 U.S. at 587–88, 102 S.Ct. at 1953–54. Outside of the antitrust field that precedent remains viable, even if not adopted by a majority of courts. *See Petro–Tech, Inc. v. Western Company of North*

America, 824 F.2d 1349, 1359 n. 11 (3d Cir. 1987); *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 884 (3d Cir.1975).

**5.** More recently, this Court has held that Congress did *not* intend to hold municipal corporations liable for treble damages under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1961–68, for the

research has uncovered does an employee who embezzles from the corporation act in the scope of employment in doing so. See Restatement (2d) of Agency § 235.

In *Asphalt Industries, Inc. v. Commissioner of Internal Revenue*, 384 F.2d 229 (3d Cir.1967), a case cited by neither party, this Court reviewed a decision by the Tax Court imposing penalties on a closely held corporation, Asphalt Industries, Inc., for failure to report corporate income embezzled by one of the two stockholders, Conrad Anderson. Anderson, the president of Asphalt and its day to day supervisor, diverted funds by preventing certain individual sales from being recorded on the corporation's books and thereafter cashing for his own account checks received for those sales made payable to the corporation. Anderson was able to do this with the assistance of Arthur Sanford, the corporate assistant secretary, and without the knowledge of the other stockholder, Richard Schwoebel, who devoted most of his attention to another business. When Anderson died unexpectedly and Schwoebel reviewed the corporation's affairs, he discovered and reported the embezzled receipts as income. The IRS assessed fraud penalties against the corporation under 26 U.S.C. § 6653(b), and the Tax Court affirmed. This Court reversed, observing:

> The fundamental issue in the case is whether Anderson's fraudulent intent to evade the tax may be attributed to the corporation.
>
> \* \* \* \* \* \*
>
> It may well be that because of the nature of the corporation's business and the activity of Anderson in carrying it out, coupled with Schwoebel's absence from its day to day affairs, outsiders might have had a right to rely upon authority which Anderson exercised even if in fact it had not been granted to him. That would be a case of apparent authority.

But *there could be no conception of apparent authority to commit fraud against the corporation* and against Schwoebel's interest in it in a case such as this, in which there is no room for the application of the doctrine that as between two innocent parties the loss should be borne by the one who made it possible.

Here there is no innocent third party who dealt with the corporation in reliance upon Anderson's authority and between whom and Schwoebel it might therefore be said that the greater innocence attends the one who had no part in entrusting to Anderson the power to commit the fraud.

This is not a case in which an innocent party seeks to enforce a contract or redress a tort by attributing Anderson's wrongful conduct to the corporation. Although the fraud penalty is a civil sanction it bears a close resemblance to criminal liability, for its purpose is not to compensate for loss, but to punish and deter wrongful conduct. The rule in contract and tort cases is founded on considerations of policy and even of social desirability. Here petitioner did not contract with the government nor mislead it into innocent conduct. It obeyed the tax-gatherer's command that it file a tax return. This obedience it was required to consummate through appropriate officers, as specified by the Internal Revenue Code. The innocent stockholder of the corporation was no more responsible for the fraud than was the government. By joining in the designation of Anderson as an officer empowered to sign the return he was no more responsible for Anderson's fraud than was the government which specified the designated officers, or than the auditing firm which prepared the return on the basis of Anderson's fraudulent suppression of the records of his embezzlement. Schwoebel

predicate acts of its officers and agents even when the predicate acts allegedly committed by the officers were within their apparent authority. *Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir.1991). Acknowledging the principle that both ordinary corporations and municipal

corporations are liable for the torts and crimes of their officers and agents against third parties, this Court emphasized that generally punitive damages are limited to instances "when the corporation enjoys the benefits of the culpable action." 937 F.2d at 911.

was as much defrauded as was the Treasury and it would be piling additional injury upon an innocent stockholder to require that the corporation in which he invested should bear the burden of assessments based upon the fraud which Anderson committed in the name of the corporation as a subordinate element in his need to conceal his embezzlement of its funds. 384 F.2d at 232, 234–35 (footnotes omitted) (emphasis added).

*Asphalt Industries* limitation on the scope of vicarious liability for tax penalties has never been legislatively or administratively modified.[6]

The government cites *United States v. O'Connell*, 890 F.2d 563 (1st Cir.1989), and *In re Atlantic Financial Management, Inc.*, 784 F.2d 29 (1st Cir.1986), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987), for the proposition that a corporation is liable for the acts of its officers under other federal statutes. *O'Connell* held a corporation liable under the False Claims Act for the frauds of its agent even though the corporation received no benefit from the fraud, 890 F.2d at 568, while *Atlantic Financial Management* applied the same principle to the securities laws. 784 F.2d at 32. *But see Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir.1991) (municipal corporation not liable under RICO for actions of employees); *United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir.1966) (corporation not liable under False Claims Act for forfeitures and penalties as result of the fraud of an officer who acted for his own benefit).

*O'Connell* and *Atlantic Financial Management* are consistent with *ASME v. Hydrolevel Corp.'s* holding that an agent's intent to benefit the corporation is not a necessary element to impose vicarious liability. Both *O'Connell* and *Atlantic Financial Management* impose liability for the torts of employees assumed to be acting with apparent authority, however, and therefore add nothing to *Asphalt Industries'* analysis of the dispositive issue in the instant matter, the existence of apparent authority.[7] *Atlantic Financial Management* is inapposite for the additional reason that the substantive provisions of the securities law relevant to that decision provide only for compensatory, not punitive damages. *See Sharp v. Coopers & Lybrand*, 649 F.2d 175, 186–87 (3d Cir.1981). Establishment of vicarious liability for compensatory damages does not imply an answer to the considerably different question of vicarious liability for penalties.

### D.

In the instant case the government urges that imposing strict corporate liability is necessary to "give the penalties teeth in the corporate context." Brief for Appellant at 17. Because such an expansion would overturn a well-established principle of corporate vicarious liability, we decline to do so in the absence of any indication that Congress intended to do so. As Judge Hastie stated in *Cirillo v. C.I.R.*, 314 F.2d 478, 485 (3d Cir.1963), in affirming the Tax Court's decision that a wife did not become

---

**6.** It was also implicitly accepted by the Second Circuit in *Hydrolevel Corp. v. American Society of Mechanical Engineers*, 635 F.2d 118, 126 n. 6 (2d Cir.1980) *aff'd sub nom. American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). The Second Circuit distinguished its imposition of "broad agency theories of liability," 635 F.2d at 126, under the antitrust law from this Circuit's rejection of expansive vicarious liability under the tax laws in *Asphalt Industries*, and from the Fifth Circuit's rejection of expansive vicarious liability under the False Claims Act in *United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir.1966), by characterizing the treble damages provisions of the antitrust laws as predominantly compensatory in nature. The Supreme Court adopted this reasoning. *See ASME*

*v. Hydrolevel Corp.*, 456 U.S. at 575–76, 102 S.Ct. at 1947. ("Moreover, the antitrust private action was created primarily as a remedy for the victims of antitrust violation.")

**7.** The government asserts that it is indisputable that Russell and MacKay had apparent authority to file American's tax returns. Reply brief for Appellant at 7. It is, however, obviously their embezzlements and the steps taken to conceal them which were the cause of American's failures to comply with the tax laws, and *Asphalt Industries* holds quite plainly that corporate officers have no apparent authority to embezzle. It begs the question to assert that their apparent authority to file a tax return was the cause of their failure to file.

liable for fraud penalties when her husband, with fraudulent intent, failed to file a timely joint return: "Neither the language of the statute nor any consideration of equity or tax policy provides a persuasive reason for imposing a broader liability."

The assessment of tax penalties against a corporation for the failure to file timely returns due to the embezzlements of its officers was upheld in one reported decision, *Janice Leather Imports, Ltd. v. United States,* 391 F.Supp. 1235 (S.D.N.Y.1974). The district court reasoned that the innocent shareholder of the corporation should be liable for the penalties solely because "he chose the corporate form of doing business and therefore must accept the law as it is applied to corporations," 391 F.Supp. at 1237. Of course, this Court is bound to follow its prior reported decision in *Asphalt Industries* rather than the district court in *Janice Leather Imports.* More generally, *Janice Leather Imports* fails to analyze just what that "law as it is applied to corporations" is, and its holding is in this regard inconsistent with the principles enunciated in *Asphalt Industries* and *Genty.*

In sum, we hold that when the officers of a corporation commit criminal acts[8] against the corporation, they do so in the absence of apparent authority. Where their crimes are proved to be the cause of the corporation's failures to fulfill its duties under the tax code, as the district court found, the corporation is not automatically vicariously responsible for the penalties resulting from those failures.

## V.

### A.

■ It remains for us to address the question whether, notwithstanding American's lack of vicarious responsibility for Russell and MacKay's misfeasances, which caused the failure to file timely returns,

deposit and pay taxes, American is directly liable for penalties for its own failures to assure the timely filing of returns and payment of taxes. If a corporation has lax internal controls or fails to secure competent external auditors to ensure the filing of timely tax returns and deposit and payment of taxes, it fails to show reasonable cause or absence of willful neglect and is itself liable for statutory penalties, notwithstanding its lack of vicarious liability for the criminal actions of its agents. *See Universal Concrete Products Corp. v. United States,* 90–2 U.S. Tax Cases (CCH) 50, 440; 1990 WL 106584 (E.D.Pa. July 24, 1990), *aff'd w/o opinion,* 941 F.2d 1204 (3d Cir.1991) (failure of corporation to establish adequate internal controls constitutes lack of ordinary business care and prudence, where even rudimentary procedures would have detected embezzlement of controller); *Conklin Brothers of Santa Rosa, Inc. v. United States,* No. C–30–1429 VRW (N.D.Cal. May 15, 1991) (corporation which "failed utterly" to oversee responsible employee did not establish reasonable cause for corporation's failure to pay payroll taxes).[9]

### B.

■ Although the question whether American had adequate internal corporate controls to establish ordinary business care and reasonable cause for its failure to ensure the filing of returns and deposit and payment of taxes remains, the government has waived this issue by choosing not to raise it before the Bankruptcy Court, *see* United States of America's Response to Reduce Claim, App. 81, and by not arguing it in this Court. *See* Brief for Appellant at 1–2 (Statement of the Issues). We generally refuse to consider issues on appeal that were not raised in the lower courts. *Frank v. Colt Industries, Inc.,* 910 F.2d 90, 100 (3d Cir.1990). This general rule applies with added force where the timely

---

**8.** The parties repeatedly and incorrectly characterize the conduct of Russell and MacKay as financial mismanagement. Our decision today addresses the issue of intentional criminal conduct and not the broader one of negligent or reckless management.

**9.** The reasoning of *Janice Leather Imports* is much more sound if analyzed as a failure to establish internal controls case and not a vicarious liability case.

raising of the issue would have permitted the parties to develop a factual record. *See Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932–33 (3d Cir. 1976). The government has argued only that, as a matter of law, American is automatically vicariously liable for the actions of Russell and MacKay, and that there is no factual support for the finding that Russell and MacKay were embezzlers. *Cf. Universal Concrete Products Corp., supra* (summary judgment granted to government on grounds that taxpayer did not show adequate internal controls to prevent embezzlement). We have rejected those contentions.

The judgment of the district court will be affirmed.