**William ANELLO; Maureen Anello, Appellants,**

v.

**INDIAN RIVER SCHOOL DISTRICT; Susan S. Bunting.**

**No. 09–1650.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 1, 2009.

Filed: Dec. 14, 2009.

---

William Anello, West Grove, PA, pro se.

Vivian Narehood, Esq., Gibbel, Kraybill & Hess, Lancaster, PA, for Appellants.

Maureen Anello, West Grove, PA, pro se.

James H. McMackin, III, Esq., David H. Williams, Esq., Morris James, Wilmington, DE, for Indian River School District and Susan S. Bunting.

Before: FISHER, HARDIMAN and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

William and Maureen Anello appeal the District Court's summary judgment in favor of the Indian River School District and Susan S. Bunting on the Anellos' claims under the Individuals with Disabilities Education Act (IDEA). We will affirm, largely for the reasons explained in the District Court's thorough opinion. *Anello v. Indian River Sch. Dist.*, 2009 WL 304214, 2009 U.S. Dist. LEXIS 8896 (D.Del.2009).

## I.

Because we write for the parties, who are familiar with the facts and procedural history, we recount only the aspects of the case that are essential to our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

The Anellos moved to the Indian River School District when their daughter G.A. was to begin third grade. Prior to her arrival, G.A. had been deemed eligible by the State of New York for instruction under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, but ineligible for instruction under the IDEA. At the beginning of the 2003–2004 school year, Indian River and the Anellos determined that G.A. would remain on her § 504 plan and established classroom accommodations. In June 2004, Indian River determined that G.A had an IDEA-eligible learning disability in reading comprehension. Accordingly, the School District drafted an individualized education plan (IEP) to address G.A.'s disability and convened a meeting with the Anellos. Unsatisfied with the steps taken by Indian River, the Anellos placed G.A. in Lighthouse Christian School in August 2004.

In support of their IDEA claim, the Anellos assert Indian River: (1) failed to follow Delaware's "child find" regulations; and (2) was on notice that G.A. needed an initial evaluation upon her arrival in the Fall of 2003.

School districts have a "child find" obligation to ensure all children with disabilities are "identified, located, and evaluated" for eligibility for special education and related services. 20 U.S.C. § 1412(a)(3)(A). Each state must establish regulations and procedures to discharge this duty. 34 C.F.R. § 300.111. In Delaware, the Department of Education created the Administrative Manual for Special Education Services (AMSES), which includes and is broader than the IDEA. Under AMSES, each school is required to create an instructional support team (IST) to evaluate potentially eligible children. AMSES § 2.3. Significantly for purposes of this appeal, AMSES leaves the definition of IST up to each school district. *Id.* § 2.3.1.

The Anellos claim Indian River would have found G.A.'s disability earlier had it convened the required IST in September 2003. Indeed, the Anellos question whether Indian River ever convened an IST because it did not submit any documentation demonstrating the IST's existence or listing the team members. Additionally, much of the testimony about the IST's

actions came from a special education teacher who was, admittedly, not a member of the IST.

■ The Anellos raise the IST issue for the first time on appeal, which renders it waived under our precedents. *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 142 (3d Cir.2001) ("Generally, barring exceptional circumstances, like an intervening change in the law or the lack of representation by an attorney, this Court does not review issues raised for the first time at the appellate level."). And, "[a]lthough we have discretion to review an argument not raised in the trial Court, we ordinarily refuse to do so." *Id.*

The Anellos claim the issue is not waived because the District Court opinion is the first finding that G.A. had an IST, so there was no need to challenge it earlier. In our view, this is insufficient to avoid the waiver rule. Appellate review is especially inappropriate here because the Anellos essentially ask us to find, on an undeveloped record, that the IST either was inadequate or did not exist at all. *See Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 97 (3d Cir.2008) ("A district court's failure to consider an issue below does not necessarily preclude us from addressing it on appeal. However, it is only appropriate for us to do so '*when the factual record is developed* and the issues provide purely legal questions, upon which an appellate court exercises plenary review.' In situations 'where the resolution of an issue requires the exercise of discretion or fact finding ..., it is inappropriate and unwise for an appellate court to step in.'" (quoting *Hudson United Bank v. LiTenda Mortgage Corp.*, 142 F.3d 151, 159 (3d Cir. 1998))); *see also Gass v. Virgin Islands Tele. Corp.*, 311 F.3d 237, 246 (3d Cir.2002) (the waiver rule "applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record." (quoting *In re American Biomaterials Corp.*, 954 F.2d 919, 927–28 (3d Cir.1992))).

Finally, it is not entirely clear that the District Court assumed there was an IST; it only mentioned such a team when summarizing the Anellos' argument. *Anello*, 2009 WL 304214, at \*10, 2009 U.S. Dist. LEXIS 8896, at \*29. The absence of any meaningful discussion of an IST in the District Court's analysis is unsurprising because the legal significance of the IST's existence was not raised below, which is the essence of waiver. *Ross v. Hotel Employees & Restaurant Employees Int'l Union*, 266 F.3d 236, 242–43 (3d Cir.2001) (waiver "seeks to insure that litigants have every opportunity to present their evidence in the forum designed to resolve factual disputes" (quoting *Patterson v. Cuyler*, 729 F.2d 925, 929 (3d Cir.1984))); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir.2009) ("[T]he crucial question regarding waiver is whether defendants presented the argument with sufficient specificity to alert the district court." (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 471 (3d Cir.1992))).

The Anellos also argue Indian River was on notice that G.A. should have been evaluated under the IDEA sooner because her § 504 plan was failing all year long, as shown by her failure on the standardized Delaware Student Testing Program (DSTP), her failing grades, and the school's failure to modify the plan to adapt to those grades. The Anellos have already prevailed upon their claim that G.A. was entitled to an evaluation after they requested one on February 3, 2004. *Anello*, 2009 WL 304214, at \*10–11, U.S. Dist. LEXIS 8896, at \*34–35. Therefore, their § 504 argument is only relevant if it can establish that Indian River should have known before February 3, 2004 that G.A. needed an evaluation.

The evidence available as of February 3, 2004 does not establish that the § 504 plan had failed, let alone that Indian River violated the IDEA. As of that date, G.A.'s grades were improving in all subjects, including math, and the School District could not know she would later fail both the third grade and the DSTP. Furthermore, even taking G.A.'s ultimate failures into account, the District Court specifically found, as a matter of fact, that the § 504 plan did not fail. Our independent review of the record indicates that this was not clearly erroneous.

We also note the record establishes that the curriculum was heavily tailored to meet G.A.'s needs, even though some of those programs were also available to others. G.A.'s teacher provided extra support at every turn and talked with the Anellos whenever they had a concern, even giving them her home phone number. Indeed, the Anellos were so satisfied with this teacher that they pulled G.A. out of specialized programs tailored to her needs because they preferred her regular teacher.

For the foregoing reasons, we are unpersuaded by the Anellos' "child find" claims.

## B.

The Anellos next claim Indian River did not propose an adequate IEP for G.A. In Delaware, the School District has the burden of establishing that its IEP was adequate. 14 Del. C. § 3140.[1]

As a substantive matter, the IEP must be tailored to the student's unique needs and "reasonably calculated to enable the child to receive [meaningful] educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir.1999). Procedurally, the IEP also must contain a statement of the child's current level of performance and how her disability affects her performance. 20 U.S.C. § 1414(d)(1)(A). Finally, it must set measurable annual goals relating both to progress in the general curriculum and additional educational needs arising from her disability. *Id.* A procedural violation is actionable, however, only if it: (1) "impeded the child's right to a free appropriate public education" (FAPE); (2) "significantly impeded the parents' opportunity to participate in the decisionmaking process"; or (3) "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E).

The Anellos claim G.A.'s IEP was substantively deficient because it treats her as disabled only in reading comprehension, even though she failed third grade in math and was eligible for instruction in writing under § 504 of the Rehabilitation Act. Giving due deference to the administrative panel's findings, *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 734–35 (3d Cir.2009), the District Court properly found that G.A. only had an IDEA disability in reading comprehension, not math or writing. The test for eligibility is a severe discrepancy between ability and achievement, AMSES § 4.8.3, and the school psychologist found a severe discrepancy only in reading comprehension.[2] Furthermore,

---

1. The Anellos correctly argue that the District Court erred when it assigned the burden to them. *Anello*, 2009 WL 304214, at *8, 2009 U.S. Dist. LEXIS 8896, at *23–24. We still affirm, however, because we reach the same conclusion with the burden properly placed. See *S.H. v. State–Operated Sch. Dist. of the* *City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003).

2. The school psychologist conducted extra testing in math and found G.A.'s scores within the average range.

as the District Court noted, the IEP is adequate because in addition to addressing G.A.'s reading comprehension needs, it contains "significant provisions devoted to addressing G.A.'s non-qualifying areas of concern[,] including math reasoning." *Anello,* 2009 WL 304214, at *12, 2009 U.S. Dist. LEXIS 8896, at *39.

▆ The Anellos also make several procedural arguments. Their strongest argument is that the IEP does not adequately state G.A.'s present level of performance. Both the IDEA and the relevant federal regulations require that statement to include "how the child's disability affects the child's involvement and progress in the general education curriculum." 20 U.S.C. § 1414(d)(1)(A)(i)(I); 34 C.F.R. § 300.320. The IEP in this case did not contain such a statement; it merely said that G.A.'s present performance level is "1.8 grade level." Although this constitutes a procedural violation, the Anellos do not explain how it: (1) impeded G.A.'s right to a FAPE; (2) significantly impeded their opportunity to participate in the decisionmaking process; or (3) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E). Because our own review of the record finds these circumstances lacking, we hold that it is not actionable.

The Anellos make additional claims of procedural error, but we find them unpersuasive. For example, they argue the IEP's goal fails because it is not adequately explained. The only goal in the proposed IEP is for G.A to "read a third grade passage at a rate of 50–70 wpm with 0–5 errors and correctly answer 80–100% of comprehension questions." Though one reading test placed G.A.'s reading level at grade 1.8, other tests placed it at 3.1 or higher. The Anellos claim the IEP should have explained the differences between the tests and why the 1.8 score was appropriate. But they do not cite any authority for requiring such an explanation and the fact that it would be preferable does not transform it into a requirement under the IDEA.

In sum, because the IEP was adequately drafted to provide G.A. with a FAPE, the Anellos are not entitled to reimbursement for tuition costs incurred when they sent her to a private school for the 2004–2005 school year. *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 276 (3d Cir. 2007) (citing *Florence County Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993)).

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.