# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2326
_____

Deaton Oil Company, LLC

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: April 10, 2018
Filed: September 21, 2018
_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

SMITH, Chief Judge.

Taxpayer Deaton Oil Company, LLC ("Deaton") appeals the district court's[1] dismissal with prejudice of its suit seeking refund, abatement, and recovery of delinquent tax penalties assessed against it. We affirm.

_____

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

## I. *Background*

When reviewing the grant of a motion to dismiss, we accept as true the allegations set forth in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint alleged the following facts. In March 2014, the Internal Revenue Service (IRS) notified Deaton that it had failed to pay employment taxes from 2010 to 2013 or to timely file the required quarterly reports. That same month, Deaton remitted payment of over $250,000 for the unpaid taxes to the IRS; in 2015, it paid the penalties and interest assessed as a result of the delinquent taxes. Deaton conducted an internal investigation into the matter. It found that Tony Rather, Deaton's operations manager during the relevant time period, failed to pay its taxes. Rather's duties included ensuring that Deaton filed and paid its employment taxes. Unfortunately, Rather proved to be untrustworthy. He missed filing deadlines and did not inform Deaton's owner, Jack Beavert, of the numerous IRS delinquency notices he had received. In addition, Rather began settlement negotiations with the IRS without Deaton's approval.

After payment of its delinquent taxes, Deaton submitted a Form 843 (Claim for Refund and Request for Abatement) seeking a refund of penalties and interest. Deaton claimed that reasonable cause justified its tax delinquency. In addition to citing Rather's actions, Deaton also claimed that its outside CPA gave assurances that Deaton paid its taxes in a timely manner. The CPA, however, did not verify that the taxes were actually paid but instead relied on Rather's representations that he had paid them.

The IRS refunded most of the penalties and interest assessed for 2013, but it denied relief as to 2010, 2011, and 2012. Deaton subsequently filed suit against the IRS to compel a refund of the remaining penalties and interest. The IRS filed a motion to dismiss, arguing that Deaton had failed to set forth facts that meet the reasonable cause standard set forth in *United States v. Boyle,* 469 U.S. 241 (1985).

The IRS argued that under *Boyle*, a taxpayer's duty to file its returns and pay its employment taxes is non-delegable and therefore cannot be excused by an agent's misconduct.

Deaton argued that *Boyle* and other authority cited by the IRS could be distinguished. Deaton contended those cases involved less egregious misconduct than that presented in its case. Deaton relied on *In re American Biomaterials Corp.*, 954 F.2d 919 (3rd Cir. 1992), for the proposition that profound misconduct coupled with concealment of that wrongdoing prevents a taxpayer from discovering a delinquency and timely fulfilling its tax obligations. Deaton averred that its reliance on an outside CPA compares favorably with that of the taxpayer in *Estate of Thouron v. United States*, 752 F.3d 311 (3rd Cir. 2014). In *Thouron*, the court held that reliance on an expert for tax advice might excuse a late filing. *Id.* at 315–16. Additionally, Deaton noted that the cases cited by the IRS were not decided at the 12(b)(6) stage, but rather at summary judgment or at trial. In its reply, the IRS stated that *American Biomaterials* was inapposite because, unlike here, that case dealt with embezzlement by the CEO/chairman of the board and CFO/treasurer. This case, the IRS argued, involves an individual employee subject to company oversight.

The district court dismissed the case in a brief written order. The court held that "Deaton had an obligation to timely remit employment taxes. Deaton's reliance on its agents—an employee and an outside CPA—cannot constitute reasonable cause for its failure to remit those taxes. Deaton's allegations do not state a claim, and dismissal of this matter is proper." *Deaton Oil Co., LLC v. United States*, No. 6:16-CV-06093, 2017 WL 2493280, at *1 (W.D. Ark. May 23, 2017) (citing *Boyle*, 469 U.S. at 246; *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315 (9th Cir. 1993)). Additionally, the district court denied Deaton leave to amend based on Deaton's failure to attach a copy of its proposed amendment. The court also determined that amendment "would be futile." *Id.* at *2. The court stated, "Deaton's complaint is not being dismissed because it lacks sufficient factual allegations to state one of the

elements of a claim, or for some similar reason. It is being dismissed because the factual allegations demonstrate that Deaton is not entitled to relief." *Id.* The district court dismissed the action with prejudice and entered judgment in favor of the IRS. Deaton timely appeals.

## II. *Discussion*

We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (cleaned up).

Deaton argues that its failures to file timely tax returns and timely pay its taxes were excusable. Factually, it relies on Rather's malfeasance and "Deaton's reliance on its outside CPA to review and confirm that all employment taxes were being paid and all returns were being filed." Appellant's Br. at 17. The facts, whether considered singularly or together, do not excuse Deaton's tax law compliance failures. We hold that the facts set forth in the complaint do not support a finding of reasonable cause. Consequently, we affirm.

The Internal Revenue Code imposes penalties on those who fail to timely pay certain federal taxes. *See, e.g.*, 26 U.S.C. § 6651 (addressing failure to file tax return or pay tax liability); *id.* § 6656 (addressing failure to deposit taxes as required). These provisions apply to employment taxes. An employer is required to withhold these taxes, place them into a trust fund, and report on a quarterly basis. *Staff IT, Inc. v. United States*, 482 F.3d 792, 798 (5th Cir. 2007) (citing 26 U.S.C. §§ 3102(a),

3402(a), 7501, 3403, & 6011(a)). Failure to do so subjects the taxpayer to mandatory penalties. *Id.* "To escape the penalties, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from willful neglect, and (2) that the failure was due to reasonable cause. *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 241 (8th Cir. 1996) (cleaned up). Though "willful neglect" and "reasonable cause" are not defined by the Internal Revenue Code, a Treasury Department regulation provides:

> [i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless . . . unable to pay the tax . . . .

26 C.F.R. § 301.6651-1(c)(1). *Boyle* expanded on this principle.

In *Boyle*, an estate hired a lawyer to assure its tax law compliance. 469 U.S. at 242. However, despite several conversations on the matter with the executor (the decedent's son), the attorney, due to a calendaring issue, did not file the return on time. *Id.* at 242–43. Upon discovery of this oversight, the estate filed its return and paid its tax obligation, including late penalties and interest. *Id.* at 243–44. The executor then brought a refund suit against the IRS, claiming that his reliance on an attorney who simply failed to fulfill his duty was reasonable cause for failure to file on time. *Id.* at 244. The Court, recognizing the importance of deadlines to the administration of the tax system, held that the filing of taxes was a non-delegable duty, and an agent's failure to act as expected did not absolve the principal of that duty:

> The time has come for a rule with as "bright" a line as can be drawn consistent with the statute and implementing regulations.

Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results. The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates. Prompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary ad hoc determinations.

Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations. Engaging an attorney to assist in the probate proceedings is plainly an exercise of the "ordinary business care and prudence" prescribed by the regulations, 26 CFR § 301.6651-1(c)(1) (1984), but that does not provide an answer to the question we face here. To say that it was "reasonable" for the executor to assume that the attorney would comply with the statute may resolve the matter as between them, but not with respect to the executor's obligations under the statute. Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months; extensions are granted fairly routinely. That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute.

*Id.* at 249–50 (footnotes omitted).

In so holding, the Court distinguished between relying on an agent for professional legal advice and relying on an agent on non-technical, non-specialized matters:

When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to

discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions.

By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. Among the first duties of the representative of a decedent's estate is to identify and assemble the assets of the decedent and to ascertain tax obligations. Although it is common practice for an executor to engage a professional to prepare and file an estate tax return, a person experienced in business matters can perform that task personally.

. . .

*It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1).*

*Id.* at 251–52 (second emphasis added) (citation omitted). In a footnote, the Court also recognized that a taxpayer's "disability" could provide reasonable cause for failure to meet a tax obligation:

The administrative regulations and practices exempt late filings from the penalty when the tardiness results from postal delays, illness, and other factors largely beyond the taxpayer's control. . . . This principle might well cover a filing default by a taxpayer who relied on an attorney or accountant because the taxpayer was, for some reason, incapable by objective standards of meeting the criteria of "ordinary business care and prudence." In that situation, however, the disability

alone could well be an acceptable excuse for a late filing.

> But this case does not involve the effect of a taxpayer's *disability*; it involves the effect of a taxpayer's *reliance* on an agent employed by the taxpayer, and our holding necessarily is limited to that issue rather than the wide range of issues that might arise in future cases under the statute and regulations.

*Id.* at 248 n.6.

Deaton's principal authority, *American Biomaterials*, is unpersuasive. In that case, the Third Circuit held that a company's failure to file its taxes was excused by the fact that its principal decisionmakers with regard to financial and tax matters were embezzling from the company. 954 F.2d at 927.

In the course of a bankruptcy proceeding, a company challenged penalties it was assessed for non-payment of taxes as a result of embezzlement committed by its CEO and its CFO. *Id.* at 921.[2] The government attempted to hold the company responsible under a strict vicarious liability theory. *Id.* at 926. The court acknowledged *Boyle*'s holding that a taxpayer's duty to file its taxes is non-delegable, but it held that the officers' criminal conduct divested them of their apparent authority on tax matters, rendering a vicarious liability theory inappropriate. *Id.* at 927. Nonetheless, the court held that this did not end the inquiry, because

> [i]f a corporation has lax internal controls or fails to secure competent external auditors to ensure the filing of timely tax returns and deposit and payment of taxes, it fails to show reasonable cause or absence of willful neglect and is itself liable for statutory penalties, notwithstanding its lack of vicarious liability for the criminal actions of its agents.

---

[2]The CEO also served as president and chairman of the board, and the CFO was also the company's treasurer.

*Id.* (citation omitted). Because the government relied only on a strict liability theory, the court held that the government waived the issue of the company's internal controls and therefore ruled in the company's favor.

Notably, though the court ultimately ruled in the company's favor, its decision expressly did not rely on the company's contention

> that its board of directors reasonably relied on the oversight of the corporation's financial affairs by an independent accountant, that the corporation's 1984-87 operating losses also resulted from the embezzlements of [CEO] and [CFO], and therefore that its noncompliance with the tax code was as excusable as if American were an individual who is rendered incompetent by mental or physical disability.

*Id.* at 923 (citation omitted).

In contrast to *American Biomaterials*, the Ninth Circuit's decision in *Conklin Brothers* relies much more heavily on *Boyle*. In *Conklin Brothers*, a business's (Conklin Brothers) office manager/controller, Diana Stornetta, failed to ensure that Conklin Brothers timely fulfilled its employment tax filing and payment obligations over a period of more than two years. 986 F.2d at 316. However, when Stornetta received the IRS notice of late penalty fees,

> neither Conklin's officers nor its accountants were aware of the assessments because Stornetta allegedly intercepted and screened the mail. Additionally, Stornetta allegedly altered check descriptions and the quarterly reports (Form 941) when she later paid these assessments. The alterations made it appear that the tax payments were solely for the current period. Stornetta also allegedly concealed the deficiencies by undertaking the performance herself of all payroll functions.

Purportedly, she did this by telling payroll clerks not to prepare the tax deposit checks anymore and that she would take care of it.

*Id.* Even though the wrongdoing was all Stornetta's, the court noted that she had only limited power in conducting her duties; importantly, to issue a payroll tax check, Stornetta either had to have it signed by Gary Bowers, the company's president and majority shareholder, or sign it herself with a countersignature from the company's corporate secretary. *Id.*

Conklin Brothers, the taxpayer, only became aware of the delinquency after Stornetta's sudden resignation. *Id.* After paying the penalty, Conklin Brothers filed suit seeking a refund on the basis that "Stornetta's intentional misconduct disabled it from adhering timely to its tax obligation." *Id.* at 318. However, the court interpreted *Boyle* to mean that a corporate agent's failure to act as she is supposed to only excuses the corporation's failure to pay if the company "can show that it was *disabled* from complying timely." *Id.* (citing *Boyle*, 469 U.S. at 248 n.6).

The Ninth Circuit looked to *American Biomaterials* and the language in *Boyle* regarding disability and rejected the claim that Stornetta's actions disabled her company. *Id*. The court held that "Stornetta's deficient and improper conduct was not largely beyond Conklin's control" because, unlike the embezzlers in *American Biomaterials*, she was subject to the supervision of both Bowers and the company's outside accountants. *Id*. The court therefore held that there was no reasonable cause for Conklin Brothers's delinquency. *Id.* at 319.

Applying these cases to the instant facts, we conclude that under *Boyle*, an agent's failure to fulfill his duty to his principal to file tax returns and make payments on behalf of the principal does not constitute reasonable cause for the principal's failure to comply with its tax obligations unless that failure actually rendered the principal disabled with regard to its tax obligations. We also conclude that disability

-10-

is a high bar that is not satisfied if the errant agent is subject to the control of his principal, whether that principal sufficiently exercised that control or not.

Though Deaton relies on *American Biomaterials*, we conclude it is materially distinguishable. In that case, dishonest financial management officials who were solely responsible for filing tax returns and making payments "incapacitated American and rendered it unable to file its tax returns and pay taxes due." 954 F.2d at 922. The government argued that the bankrupt taxpayer was vicariously liable as a matter of law for the actions of its dishonest officials, not that their actions fell short of being a "disability" under *Boyle*. *Id.* at 928. In this case, Rather worked within a corporate structure in which he fell under the supervision of at least one person, the company's owner. *See* Complaint at 4 , ¶ 14; 5, ¶ 19; and 9, ¶ 34, *Deaton Oil Co., LLC v. United States*, No. 6:16-CV-06093, (W.D. Ark. Sept. 22, 2016), ECF No. 1 (implicitly describing Beavert as Rather's superior). Therefore, the taxpayer was not disabled, and even if it was, its disability was not brought about by circumstances beyond its control. As such, Rather's actions do not constitute reasonable cause. Based on our conclusion that Rather's actions do not constitute reasonable cause for Deaton's compliance, we reject Deaton's argument that the district court erred by dismissing the case under Rule 12(b)(6).

Deaton's reliance on its outside CPA's statements is also not a basis for relief. The relevant paragraph in the complaint states:

> Throughout this Subject Time Period, Deaton Oil also relied upon its outside CPA to confirm that all employment taxes were being paid and all returns were being filed. To confirm these payments and filings were done, however, the CPA merely made inquiry to Rather each year over the four years as to whether Rather had made timely filings and payments. Rather assured the CPA that all filings and payments had been timely made.

Complaint at 6, ¶ 21.[3]

The information sought from the outside CPA was not advice about a complicated matter that required expertise, but instead a factual question as to whether Deaton's taxes had been filed and paid. Deaton made no allegation that the accountant provided any information to Deaton other than that the ministerial act of filing and paying taxes had been accomplished. This is insufficient under *Boyle*. 469 U.S. at 251; *see also Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 730 (8th Cir. 1996) (rejecting argument of taxpayer in negligent underpayment case that advice from his tax lawyer could excuse underpayment because "[t]he 'advice' . . . was little more than a generalized statement that he could lose money on the transaction" and there was no evidence that the lawyer "researched the tax aspects of the transaction [or] that he investigated [the relevant investment vehicle] or the manner in which [it] operated" (citations omitted)).

The cases Deaton relies on for this point are unhelpful. *Estate of Thouron* involved a an estate that claimed to have relied on advice from its tax counsel with respect to the application of a statute governing deferment of tax liabilities. 752 F.3d at 312–13 (citing 26 U.S.C. § 6166). Deaton cannot claim reliance on expertise of that sort. *Van Camp & Bennion v. United States*, 251 F.3d 862 (9th Cir. 2000), is also not relevant. Like *Thouron*, *Van Camp* recognizes that reliance on expert advice might excuse nonpayment of taxes. *See id.* at 868. But, as discussed, Deaton relied on a mere factual representation that could have been readily verified or disproven, not on expert advice. Though advice from a legal or tax professional can, in some circumstances, provide a basis for reasonable cause, the nature of the "advice" Deaton received from its outside CPA is not the kind envisioned by *Boyle* and its progeny.

---

[3]Due to ambiguity in Deaton's submissions on this issue, it is unclear whether Deaton is alleging that its CPA affirmatively told it that its taxes were paid, or simply failed to inform Deaton that its taxes were not paid. *See* Appellant's Br. at 19. However, the result would be the same in either case.

### III. *Conclusion*

Deaton's own alleged facts show that it is not entitled to relief. The district court's 12(b)(6) dismissal was therefore appropriate; for the same reason, the district court's decision not to allow an amendment due to futility was sound. *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) . . . ." (citation omitted)). Alternatively, we may affirm the denial of leave to amend due to the failure to attach a proposed amended complaint. *In re 2007 Novastar Fin. Inc. Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009). Accordingly, we affirm.

_____